NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANNI MICHAEL<br><br>Plaintiff,<br><br>v.<br><br>BRAVO BRIO RESTAURANTS LLC,<br><br>Defendant. | Civil Action No. 23-3691 (RK) (DEA)<br><br>**MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Bravo Brio Restaurants LLC's ("Defendant") Motion to Stay and Compel Arbitration, (ECF No. 9), seeking to stay the proceedings instituted by Yanni Michael's ("Plaintiff") Complaint, (ECF No. 1). Plaintiff filed a brief in opposition to Defendant's Motion, (ECF No. 11), and Defendant filed a reply brief, (ECF No. 12). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion to Stay and Compel Arbitration is **DENIED**.

**I.   BACKGROUND**

Plaintiff was employed by Defendant as a server in its Freehold, New Jersey restaurant starting in the spring of 2022. ("Compl.", ECF No. 1.) Plaintiff filed her Complaint on July 11, 2023, alleging that her supervisor, Defendant's employee Tony Leon ("Leon"), subjected her to sexual discrimination, retaliation, and a hostile work environment in violation of Title VII, 42 U.S.C. § 2000e *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-12. (Compl. ¶¶ 43–55.)

Plaintiff's five-count Complaint includes Counts 1 and 2, alleging discrimination and retaliation under Title VII; Counts 3 and 4, alleging discrimination and retaliation under the NJLAD; and Count 5, alleging aiding and abetting under New Jersey State Law. (Compl. ¶¶ 47–48, 54–55, 57–58). The central issue in the instant case involves Plaintiff's discrimination claims under Title VII and the NJLAD. (*See generally* ECF Nos. 9, 11, 12.) Thus, this Court's analysis focuses on Counts 1 and 3 for purposes of determining if Plaintiff successfully alleged a sexual harassment claim for purposes of invoking the EFAA.

Defendant's instant Motion is based on the Mutual Arbitration Agreement (the "Agreement") that Defendant contends Plaintiff signed as a condition of her employment. (ECF No. 9 at 1.) The relevant parts of the Agreement, which Defendant filed with its Motion, are provided below:

> [T]he Company and Employee agree that any and all disputes, controversies, or claims ("Claims") arising out of or related to the Employee's [] termination of employment from the Company, or otherwise, shall be submitted to and resolved through confidential final and binding arbitration under the American Arbitration Association ("AAA") Employment Arbitration Rules and Mediation Procedures in effect at the time the claim is made . . .
>
> This Agreement is intended to cover and includes, but is not limited to, any and all Claims for…discrimination, harassment, retaliation, misrepresentation, sexual harassment or hostile work environment. . . .
>
> The Company and Employee agree that claims covered under this Agreement will not be subject to trial by jury or by a court of any jurisdiction. In addition, the Company and Employee waive any claim to class or collective relief and agree to proceed individually for all claims in arbitration. . . .
>
> The obligations set forth in this Agreement shall survive the termination of the Employee's employment with Company.

(Ex. B to Certification of Michael S. Hanan ("Hanan Cert."), ECF No. 9-4.) Plaintiff electronically signed an acknowledgement of the Agreement on February 29, 2022. (Ex. C to Hanan Cert., ECF No. 10.) The acknowledgement stated:

> I HEREBY ACKNOLWEDGE THAT I HAVE READ THIS DOCUMENT AND UNDERSTAND THAT EXCEPT AS PROVIDED IN THIS DOCUMENT, ALL DISPUTES BETWEEN ME AND THE COMPANY WILL BE SUBMITTED TO, AND RESOLVED BY, BINDING ARBITRATION, AND I SPECIFICALLY AUTHORIZE AND AFFIRMATIVELY AGREE TO THE ARBITRATION OF THESE DISPUTES.

(*Id.*)

Defendant employed Leon as Plaintiff's supervisor. (Compl. ¶¶ 8–9.)[1] Plaintiff is a transgender female. (*Id.* ¶ 6.) Plaintiff alleges that in June and September 2022, Leon called her a "maricon" which Plaintiff alleges means "faggot" in Spanish. (*Id.* ¶¶ 17, 22.) The Complaint alleges that Plaintiff heard Leon discuss her gender with her colleagues and would tell them that Plaintiff "es un hermano" (which means "he is a brother" in Spanish). (*Id.*) Further, Plaintiff alleges that her co-workers reported that Leon told them Plaintiff "is a boy and he should act like a boy" and not to call Plaintiff "they" or "them" because there are "only two genders. It's only he or she." (*Id.* ¶¶ 14, 19–21.) Plaintiff alleges that Leon accused her of having a romantic relationship with a co-worker and said he bets Plaintiff "take[s] it like a little bitch." (*Id.* ¶ 18.)

The Complaint alleges that Leon assigned her fewer tables to work than her colleagues. (*Id.* ¶ 23.) When Plaintiff confronted Leon about this disparity, he said "you need to man up and use what God gave you between your legs." (*Id.*) In October 2022, Plaintiff alleges that Leon requested she put her hair up. (*Id.* ¶ 26.) Plaintiff asked why none of the other female workers had

---

[1] Defendant does not contest that it employed Leon or that Leon was Plaintiff's supervisor. (*See generally* ECF Nos. 9 & 12.)

3

to put their hair up and Defendant responded "well, you're not a girl." (*Id.*) Plaintiff reported these issues to her regional manager, and someone from Defendant's human resources department reached out to Plaintiff to investigate her claims. (*Id.* ¶¶ 30–31.) Plaintiff claims that after her call with human resources, Defendant informed Plaintiff that she was suspended indefinitely because Defendant had major concerns and accused Plaintiff of making a bomb threat. (*Id.* ¶ 32.)

Days after Plaintiff's suspension, Plaintiff was asked to come back to work for Defendant. (*Id.* ¶ 33.) Upon returning, Plaintiff states that she received a disciplinary letter from Defendant that outlined a litany of issues with Plaintiff, but did not mention the bomb threat or any of her claims against Leon. (*Id.* ¶ 34.) Plaintiff states that Defendant's refusal to address her claims against Leon resulted in Plaintiff's constructive termination on January 24, 2023. (*Id.* ¶ 36.)

## II.   LEGAL STANDARD

"[W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013) (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 482 (E.D. Pa. 2011). "For a court to compel arbitration, it initially must find that there is a valid agreement to arbitrate because the basis for contractual arbitration is consent, not coercion." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim

4

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). When reviewing a motion to dismiss for failure to state a claim, courts first separate the factual and legal elements of the claims and accept all of the well-pleaded facts as true. *See Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir. 2009). While Federal Rule of Civil Procedure 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010).

### III.     DISCUSSION

Plaintiff argues that the Agreement is unenforceable on two grounds. *First,* the Agreement is invalid because Defendant failed to sign it. *Second,* Plaintiff's Complaint alleges sexual harassment, which implicates the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 ("EFAA"), 9 U.S.C. Section 4, and renders the Agreement unenforceable. The Court addresses each argument in turn.

A.   **EXISTENCE OF A VALID ARBITRATION AGREEMENT**

To compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. Sections 1-16, a court must find that: "(1) the parties entered into a valid agreement to arbitrate; and (2) plaintiff's claims fall within the scope of the arbitration agreement." *Century Indem. Co.,* 584 F.3d at 523. To determine whether an arbitration agreement is valid, courts should apply ordinary state-law principles that govern contracts. *See Ailments Krispy Kernals, Inc. v. Nichols Farms,* 851 F.3d 283, 289 (3d Cir. 2017) (stating that courts "look to applicable state law to determine whether the parties agreed to arbitrate"). An arbitration agreement is valid and enforceable under New Jersey law when it "clearly" and "unambiguously" puts the parties on notice of their rights and their "intent to surrender those rights." *Noren v. Heartland Payment Sys., Inc.,* 154 A.3d 178, 183 (N.J. Super. Ct. App. Div. Feb. 6, 2017); *see also Atalese v. U.S. Legal Services Group, L.P.,* 99 A.3d 306, 313 (2014) ("[A]n agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'").

Plaintiff argues that the Agreement is invalid because Defendant's missing signature indicates a lack of mutual assent between the parties to be bound to the agreement. (ECF No. 11 at 4.)[2] However, the FAA requires only that an arbitration agreement be written, not that it be signed. 9 U.S.C. § 2. Accordingly, the appropriate analysis for the validity of the Agreement is not whether Defendant signed it, but whether both parties intended to be bound by the contract and Plaintiff was on notice of what rights she surrendered. *See Noren,* 154 A.3d at 183; *see also*

---

[2] The Court notes that Plaintiff does not challenge the second element required to compel arbitration under the FAA: that Plaintiff's claims fall within the scope of the arbitration agreement. *See Century Indem.,* 584 F.3d at 523. Indeed, the Agreement explicitly covers sexual harassment claims. (*See* Ex. B to Hanan Cert., ECF No. 9-4 ("This Agreement is intended to cover and includes . . . any and all Claims for . . . discrimination, harassment, [], sexual harassment or hostile work environment . . . .").)

*Hopkins v. New Day Financial*, 643 F. Supp. 2d 704, 720 (E.D. Pa. 2009) ("The existence of a signature by one of [d]efendents' representatives is immaterial.").[3]

Plaintiff does not argue she was confused as to what rights she was giving up by signing the Agreement. (*See generally* ECF No. 11.) The language of the Agreement clearly and unambiguously put Plaintiff on notice as to what rights she would surrender upon signing. (*See* Ex. B to Hanan Cert., ECF No. 9-4 ("[T]he company and employee agree that claims covered under this agreement will not be subject to trial by jury or by a court of any jurisdiction.").) The fact that Plaintiff signed the Agreement, coupled with her continuing to work for Defendant, is sufficient to show her intent to be bound by the contract. *See Byrne v. K12 Services Inc.*, No. 17-4311, 2017 WL 3397033, *2 (D.N.J. Aug. 8, 2017) (plaintiff signing the arbitration agreement and continuing to work for defendant for five years was sufficient "to show [plaintiff's] intent to be bound" (citing *Quigley v. KPMG Peat Marwick, L.L.P.*, 748 A.2d 405, 412–13 (N.J. Super. Ct. App. Div. 2000))).[4]

Defendant prepared the Agreement and seeks to enforce it, clearly expressing an intent to be bound by its terms. Thus, mutual assent to be bound to the Agreement exists in the instant case, and the Agreement is valid on its face, despite Defendant failing to sign it. *See Pritzker v. Merrill*

---

[3] Plaintiff cites *Leodori v. CIGNA Corp.* for the proposition that one party's failure to sign an arbitration agreement "is a significant factor in determining whether the two parties mutually" reached an agreement. *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1106 (2003). However, in *Leodori*, the party challenging the arbitration agreement's enforceability had not signed the agreement. *Id.* In the instant case, Plaintiff who is challenging the Agreement's enforceability signed it. Further, the court in *Leodori* goes on to explain that contracts do not need to be in writing, and absent a statutory requirement for both parties' signature, the absence of one party's signature does not make a contract unenforceable. *Id.*

[4] Plaintiff claims that the detached signature page to the Agreement, which reads "I hereby acknowledge that I have read this document," (Ex. C to Hanan Cert., ECF No. 9-4), is confusing because "the Court cannot possibly know what 'this document' is." (ECF No. 11 at 4.) However, the first line of the detached signature page states: "Michael Yanni – BravoBrio Mutual Arbitration Policy," clearly referencing to which "document" the acknowledgment refers. (Ex. C to Hanan Cert., ECF No. 9-4.) Accordingly, the Court is not persuaded that Plaintiff was confused by the Agreement's standalone signature page.

7

*Lynch, Pierece, Fenner & Smith, Inc.* 7 F.3d 1110, 1113 (3d Cir. 1993) (compelling arbitration even when defendants had not signed the agreement). Despite the existence of a valid arbitration agreement, the EFAA makes any pre-dispute arbitration agreement unenforceable when a plaintiff asserts a sexual harassment claim. 9 U.S.C. § 402(a); *see Delo v. Paul Taylor Dance Foundation, Inc.*, 685 F.Supp.3d 173,185 (S.D.N.Y. 2023) (holding that plaintiff, "at the very least, plausibly plead sexual harassment violations of [New York discrimination laws], the EFAA applies to block arbitration of all her claims.")

**B.   SEXUAL HARASSMENT CLAIM**

The FAA requires courts to "place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). The EFAA amends the FAA as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no pre-dispute arbitration agreement . . . shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute.

9 U.S.C. § 402(a). "Sexual harassment dispute" is defined as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA was enacted on March 3, 2022, and applies to claims that accrued on or after that date. *See* Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022). The EFAA does not adopt a specific standard a plaintiff must meet to allege a "sexual harassment dispute" to trigger the EFAA's provisions. Thus, the Court determines whether a plaintiff has "alleg[ed] conduct constituting a sexual harassment dispute," 9 U.S.C. § 402(a), by applying the familiar Rule 12(b)(6) standard to evaluate whether a plaintiff has sufficiently plead a claim under the law allegedly violated. *See Cornelius v. CVS Pharmacy, Inc.*, 23-01858 (SDW)(AME) 2023 WL 6876925 at *2 (D.N.J. 2023)

In the instant case, Plaintiff alleges Defendant violated Title VII and the NJLAD. New Jersey courts have interpreted the NJLAD and Title VII similarly. *See Cardenas v. Massey,* 269 F.3d 251, 261–62 (3d Cir. 2001) (noting that an actionable hostile work environment claim under the NJLAD "closely resemble[s] the first four elements of [a] Title VII hostile work environment claim"). The only difference between the hostile work environment analysis under Title VII and NJLAD is that Title VII requires an additional element of *respondeat superior* when a plaintiff sues their employer for the acts of an employee. Therefore, any plaintiff who successfully pleads a *prima facie* Title VII claim will have also shown the elements required by the NJLAD. *Id.* As a result, this Court proceeds with the Title VII analysis, and does not discuss the NJLAD separately, except to note that Plaintiff has adequately alleged an NJLAD claim because she has pleaded one under Title VII.

Under Title VII, allegations of a hostile work environment are one of two recognized theories of sexual harassment. *See Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986) ("A plaintiff seeking relief against an employer for sexual harassment in the workplace can proceed under two theories: quid pro quo harassment and a hostile work environment."). A hostile work environment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* To establish a hostile work environment claim under Title VII, a plaintiff must show: "(1) intentional discrimination because of their sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; [and] (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position." *Huston v. Procter & Gamble Paper Prods. Corp.,* 568 F.3d 100, 104 (3d Cir. 2009) (quoting *Weston v. Pennsylvania,* 251 F.3d 420, 426 (3d Cir. 2001)). To hold an employer liable, the plaintiff must also establish a fifth element, *respondeat superior.* (*Id.*)

Regarding element one—establishing intentional sex discrimination—Plaintiff alleges that Leon gave Plaintiff fewer tables than the rest of the employees, and when Plaintiff asked why, Leon responded that she needed to "man up and use what God gave you between your legs." (Compl. ¶ 17); *see also Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 264 (3d Cir. 2001) (stating that a plaintiff can prove discrimination because of sex by demonstrating that the harasser "was acting to punish the victim's noncompliance with gender stereotypes"). Plaintiff alleged that Leon required her to tie her hair up. (*Id.* ¶ 26.) When Plaintiff asked why she was the only girl required to do so, Leon responded "well you're not a girl." (*Id.*) Such allegations show that Leon made derogatory comments and punished Plaintiff for not appearing or behaving "with societal stereotypes of how men ought to appear or behave." *Bibby*, 260 F.3d at 264. Leon's discriminatory treatment was clearly motivated by Plaintiff being transgender, thus qualifying as sex discrimination under element one. *See Bostock v. Clayton County,* 590 U.S. 644, 645 (2020) (holding that "because discrimination on the basis of [] transgender status requires an employer to intentionally treat individual employees differently because of their sex, an employer who intentionally penalizes an employee for being [] transgender also violates Title VII"). Thus, Plaintiff has sufficiently plead sex discrimination as Leon sought to punish Plaintiff for her "noncompliance with gender stereotypes." *Bibby,* 260 F.3d at 264.

Regarding element two, determining whether sex discrimination is severe or pervasive, a court must consider "the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift,* 510 U.S. 17, 23 (1993.) When considering Plaintiff's allegations in total, a jury could reasonably conclude that someone in Plaintiff's position would find Leon calling her a homophobic slur in Spanish on multiple

occasions, discussing her gender identity to other employees, and commenting on how Plaintiff "takes it" from a purported romantic partner as sufficiently pervasive and regular at this preliminary juncture. *See Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (holding that a supervisor's single use of a racial slur against plaintiffs, coupled with a threat to fire them, was sufficiently severe to create a hostile work environment under Section 1981, which is analyzed according to the same factors as Title VII claim); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("isolated incidents" will amount to harassment if "extremely serious"). Despite only working for Defendant for ten months, Plaintiff alleged over seven instances of discriminatory conduct by Leon during this time. (*See generally* Compl.) Plaintiff's allegations go beyond "simple teasing, offhand comments, and [non-serious] isolated incidents," which the Supreme Court has cautioned would not "amount to discriminatory changes in the terms and conditions of employment." *Abramson v. William Paterson College of New Jersey*, 260 F.3d 265, 280 (3d Cir. 2001) (quoting *Faragher v. City of Boca Raton*, 524 U.S., 775,788 (1998)). Thus, Plaintiff sufficiently alleged that she endured persistent harassment by Leon in satisfaction of element two.

Regarding elements three and four, Plaintiff alleges that she "suffered and continues to suffer from severe emotional distress" as a result of Leon's discriminatory actions. (Compl. ¶ 39.) Further, after reporting these comments, Plaintiff alleges that Leon retaliated against her by falsely accusing her of making a bomb threat and suspending her from work. (*Id.* ¶¶ 31–36.) Such allegations would lead a reasonable individual in Plaintiff's position to feel detrimentally impacted by Leon's discriminatory conduct. *See Huston*, 568 F.3d at 104 (stating requirements for elements three and four of Title VII hostile environment claim which require plaintiff show she was

11

detrimentally affected by discrimination and that a reasonable woman in plaintiff's position be affected in the same way).

Because Plaintiff seeks to hold Defendant—her alleged harasser's employer—liable, she must establish element five, *respondeat superior*. Plaintiff alleges that Leon was her supervisor and employed by Defendant. (Compl. ¶¶ 8-9.) "The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel v. M &Q Packaging Corp.*, 706 F.3d 157, 169 (citing *Huston*, 568 F.3d at 104.) Defendant does not contest that Leon was Plaintiff's supervisor. (*See generally* ECF Nos. 9 & 12.) Thus, based on *respondeat superior*, Defendant is responsible for Leon's discriminatory actions because Leon was Plaintiff's supervisor.

Defendant did not engage in the five-element analysis, *supra*, instead arguing more generally that Plaintiff's Complaint is deficient because it does not allege any sexual advances or include the phrases "sexual assault" or "sexual harassment." (ECF No. 12 at 3.) Further, Defendant claims that a hostile work environment claim based on Plaintiff being transgender is not "appropriate to invoke" under Title VII. (*Id.* at 4.) However, as noted above, the Supreme Court clearly recognized discrimination based on an individual being transgender as sex discrimination under Title VII. *See Bostock*, 590 U.S. at 645. Further, Title VII recognizes hostile work environment claims as a theory to establish sexual harassment. *See Meritor Savings Bank, FSB*, 477 U.S. at 65 (the Court did not limit Title VII claims to those of a sexual nature, noting "Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule and insult"); *see also Andrews v. City of Phila.*, 895 F.2d 1469, 1485 (3d Cir. 1990) (stating that under Title VII, to show discrimination, "the offensive conduct is not necessarily required to

include sexual overtones" and "the Supreme Court [in *Meritor*] in no way limited [Title VII] to intimidation or ridicule of an explicitly sexual nature").

Accordingly, Plaintiff's Complaint—which explicitly references a hostile work environment claim that pleads facts alleging Defendant discriminated against her because she is a transgender female—is not lacking simply because it does not include the words "sexual assault" or "sexual harassment." *See Bostock,* 590 U.S. at 645; *see also Bibby*, 260 F.3d at 262 (noting harassment under Title VII can be shown where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace"); *see also Delo,* 685 F. Supp. 3d at 181 (stating that simply because the plaintiff did not style any of her claims as "sexual harassment" claims does not mean that the underlying facts of the complaint cannot allege such a cause of action).

Based on the above analysis, at this preliminary pre-discovery juncture of the litigation, Plaintiff's allegations are sufficient to survive a motion to dismiss, as the Complaint adequately alleges a hostile work environment claim under Title VII that implicates the EFAA, rendering the otherwise valid arbitration agreement unenforceable.[5] *See* 9 U.S.C. § 402(a); *see also Castleberry,* 863 F.3d at 266 ("[A] claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite *prima facie* elements have been established."). Thus, Defendant's motion to compel arbitration is denied.[6]

---

[5] Defendant cites *Yost v. Everyrealm, Inc.*, where the court found plaintiff's complaint failed to allege sufficient facts to plead a sexual harassment claim under New York's discrimination statute. *Yost v. Everyrealm, Inc.* 657 F. Supp. 3d 563, 591 (S.D.N.Y. 2023). However, the instant case is distinguishable from *Yost* because Plaintiff alleged sufficient facts to plausibly plead a claim of sexual harassment under Title VII.

[6] Plaintiff argues that all the counts in her Complaint (i.e., retaliation and aiding and abetting claims under federal and state law) relate to her hostile work environment sexual harassment claim, and therefore, the entire "claim" is not subject to arbitration. (ECF No. 11 at 3.) Plaintiff cites to *Mera v. SA Hospitality Group, LLC,* and *Johnson v. Everyrealm, Inc.,* for the proposition that "where a claim in a case alleges 'conduct constituting a sexual harassment dispute' as defined, the EFAA… makes pre-dispute arbitration

---

agreements unenforceable *with respect to the entire case relating to that dispute.*" *Johnson.,* 657 F.Supp.3d at 562; *see also Mera,* 675 F.Supp.3d at 447. Defendant did not respond to this argument in its brief, and thus waives any argument in opposition to Plaintiff's argument that her entire claim is not subject to arbitration. (*See generally* ECF No. 12.); *see Dreibelbis v. Scholton,* 274 F. App'x 183, 185 (3d Cir. 2008) (affirming district court's grant of a motion to dismiss on grounds raised in defendants' motion but not addressed in plaintiff's opposition despite "ample opportunity" to contest it (citing Confer v. Custom Eng'g Co., 952 F.2d 41, 44 (3d Cir. 1991) and Laborers' Intern. Union of N. Am., AFL–CIO v. Foster Wheeler Energy, 26 F.3d 375, 398 (3d Cir. 1994))); *Woodell v. Coach,* No. 22-2222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) ("As Woodell does not address these arguments in his opposition brief, any arguments in opposition are deemed waived." (citing Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd., No. 12-3375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013))).

## CONCLUSION

For the reasons set forth above, Defendant's Motion to Stay and Compel Arbitration, (ECF No. 9), is **DENIED.** An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: June 10, 2024

15